# EXHIBIT 19

1

2626/2016, Criminal
09/27/2016 A.D.

[logo]
Courts Department                          Government of Ras Al-Khaimah
Courts Department                          Government of Ras Al-Khaimah

### The Criminal Court of Ras Al-Khaimah

**In the name of His Highness Sheikh / Saud Bin Saqr Bin Mohammed Al-Qasimi, the Ruler of Ras Al-Khaimah,**

**Formed publicly under the presidency of Judge / Sameh Hamed Shaker**     **Court President**

**Judge / Hosam El-Din Mohammed Ali**     **Member**

**Judge / Bassam Khalil Al-Yamani**     **Member**

**and Mr. / Jamal Hasab Al-Nabi**     **Public Prosecutor**

**and Mr. / Mohammed Al-Shahat Al-Hajine**     **Secretary**

### During the public hearing of 09/27/2016 A.D.

### Issued the following judgment

### In Public Prosecution Case No. 2626/2016, Criminal, Ras Al-Khaimah

### Against

**Defendants: 1. Oussama El Omari**

**2. Abdul Rahim Merzaq**

### Reasons and verdict of the judgment issued in Case
### No. 2626/2016 A.D., Criminal, Ras Al-Khaimah

After reading the referral order, hearing the Public Prosecution's requests, reviewing the documents, and deliberating as required by law:

The Public Prosecution indicted:

**1. Oussama El Omari**          **(US citizen)**

**2. Abdul Rahim Merzaq**          **(Moroccan citizen)**

Because during the period from 2003 to 2012          In the District of Ras Al-Khaimah

**The First Defendant:** While he was a public official at the Ras Al-Khaimah Free Trade Zone, he was entrusted with protecting the public interest. However, in his former capacity, he intentionally harmed the Authority's funds and interests by causing it financial damages estimated at three hundred

[seal:] Government of Ras Al-Khaimah
[emblem]
Public Prosecution Department
Transaction Section

**The Secretary**                                        **The Panel President**
[signature]                                              [signature]

2626/2016, Criminal
09/27/2016 A.D.

[logo]
Courts Department                                    Government of Ras Al-Khaimah
Courts Department                                    Government of Ras Al-Khaimah

ninety three thousand five hundred sixty nine dirhams and twenty three fils (AED 393,569.23) in order to achieve personal gain in that amount. In doing so, he unduly deprived the Authority of the said sum as indicated in the documents.

**The Second Defendant:** He participated, through agreement and assistance, with the First Defendant in committing the crime covered by the first charge. He did so by agreeing with the First Defendant to commit that crime, and assisting him in committing that crime by drafting for him an absolute and general power of attorney for the Emaar RAK Company, which enabled the First Defendant to use the Second Defendant's name in order to achieve personal gain. Indeed, the crime occurred based upon this agreement and this assistance as indicated in the documents.

The Public Prosecution asked that the Defendants be punished under the provisions of Articles ((5/ paragraph (1) item (1), 45/2-3, 47, 227 and 230)) of Federal Penal Code No. ((3 of 1987)).

A hearing was set for 09/04/2016 to examine the case. However, neither of the Defendants appeared despite being duly served with notice thereof as per Article ((159)) of the Code of Criminal procedure. Indeed, it was established from the notices of service that they are abroad. Accordingly, the Court hereby rules in absentia in application of Article ((198/1)) of the Code of Criminal Procedure.

The Court has ascertained the facts of the case from all case documents, from the Public Prosecution's investigations as set forth in the photocopy of [the documents of] Case No. 158 of 2015, Criminal, Ras Al-Khaimah, and from the actions taken by the Public Prosecution in terms of forming an accounting committee from the consulting firm of Malik Marzouk & Co. to examine the violations committed by the First Defendant while he headed the Ras Al-Khaimah Free Trade Zone Authority. Indeed, the First Defendant, a Moroccan citizen who holds a US passport, worked for the Investment Authority at the Free Trade Zone in the position of Chief Executive Officer. In his capacity as Director General, he was entrusted with using the Authority's funds to undertake projects, handle sales for its benefit, and deposit the funds with the State. He held that position from 02/08/2003 to 06/30/2013. The Authority is a government authority that is affiliated with the Government of Ras Al-Khaimah, and was established pursuant to the Ras Al-Khaimah Free Trade Zone Law, which was promulgated by the Emiri Decree of 05/01/2000 A.D. The Authority performs its missions in accordance with the provisions of the law. Indeed, it is an entity in the public interest, and its employees are public officials. While the First Defendant was

[seal:] Government of Ras Al-Khaimah
[emblem]
Public Prosecution Department
Transaction Section

**The Secretary**                                              **The Panel President**
[signature]                                                    [signature]

2626/2016, Criminal
09/27/2016 A.D.

[logo]
Courts Department                                         Government of Ras Al-Khaimah
Courts Department                                         Government of Ras Al-Khaimah

the Authority's Chief Executive Officer, the Second Defendant, Abdul Rahim Merzaq, who owns Emaar RAK, which provides fast food meals at the bus stop, granted an absolute power of attorney to the First Defendant. The latter used that power of attorney to obtain a consultancy and service license from the Authority on behalf of the license holder, the Second Defendant, in order to market, finance and manage properties and real estate. He did so even though it [i.e. Emaar RAK] had no office or headquarters inside the free trade zone. Indeed, leasing contracts were concluded between the Authority and Emaar RAK, but it [i.e. Emaar RAK] failed to renew them through payment of the annual fees for the period from 11/09/2004 to 11/09/2010. As a result, the Authority lost out on substantial sums of money; a fact that the Authority reported [to the Public Prosecution]. The Public Prosecution then formed a committee comprised of the Courts Department's experts. The committee's mission was set forth in the formal investigation report dated 10/06/2015, and it referred thereto. The Committee concluded that several violations had been committed.

In support of the occurrence of aforementioned incident, there was reference to the statements made by Mr. Refaat Hussein Marzouk Ahmed, as well as those made by a member of the committee formed at the Public Prosecution, namely Maan Al-Breig. There was also reference to the contents of both of Emaar RAK's license renewal applications, as well as the Free Trade Zone Authority's statement that the First Defendant is the actual owner of Emaar via the absolute power of attorney granted thereto by the Second Defendant.

Indeed, during the Public Prosecution's investigations, Mr. Refaat Hussein Marzouk Ahmed – an accounting expert and manager and owner of the chartered accountants office of Malik Marzouk & Co. – stated that the Ras Al-Khaimah Free Trade Zone Authority tasked him with looking into and preparing a report about the violations that the First Defendant, Oussama El Omari, committed. In his report, he concluded that the Defendant, Oussama El Omari, used Abdul Rahim Merzaq's name to obtain a commercial license in the name of Emaar RAK under number 0091. That number was subsequently amended to number 6000730. However, the First Defendant failed to collect the fees, totaling AED 40,000, for this license and its renewal. Moreover, he allowed Emaar RAK to do business in the free trade zone even though it had no headquarters or office therein, which constitutes a violation of the rules and laws. This took place from the date the license was issued on 11/09/2003 and until 2007, the date on which the first leasing relationship arose between the Authority and Emaar RAK. This caused a loss of 240,000 thousand dirhams in rent from the Company's headquarters since 2007. Moreover, on 03/03/2011, the [First] Defendant concluded a one-year leasing contract with Emaar RAK for

[seal:] Government of Ras Al-Khaimah
[emblem]
Public Prosecution Department
Transaction Section

The Secretary                                                     The Panel President
[signature]                                                       [signature]

2626/2016, Criminal
09/27/2016 A.D.

[logo]
Courts Department                                    Government of Ras Al-Khaimah
Courts Department                                    Government of Ras Al-Khaimah

the G3 Office, at an annual rent amount of AED 32,900, which constituted a 30% discount, i.e. a sum of AED 16,676 per year. This discount continued for three years, and totaled a sum of AED 38,380. This occurred even though no other company operating within the Authority['s free trade zone] received that discount. Moreover, on 02/13/2011, he [i.e. the First Defendant] amended the leasing contract for the G7 Office thus granting Emaar RAK the right to manage a fast food restaurant at the bus station. This occurred even though there were no agreements between the Authority and the Company to manage that restaurant free of charge. This resulted in a loss of monies for the Authority.

In addition, Mr. Maan Al-Breig – a banking expert accredited by the Ministry of Justice and a member of the committee formed by the Public Prosecution – stated that the Ras Al-Khaimah Free Trade Zone Authority's funds are public funds owned by the Government of Ras Al-Khaimah, that its employees are public officials, and that Defendant Oussama El Omari worked as the Chief Executive Officer and Director General of the Ras Al-Khaimah Free Trade Zone Authority from 02/08/2003 to 06/30/2012. He [i.e. Mr. Al-Breig] added that, in his capacity as a committee member, he held several meetings with the Free Trade Zone Authority's officials, and with Defendant Oussama El Omari's attorney, and that these parties had submitted their documents. The Committee's review thereof indicated that, during his employment [at the Authority], the [First] Defendant was an agent [of Emaar RAK] as per a general and absolute power of attorney that was granted to him by Emaar RAK's owner, Mr. Abdul Rahim Merzaq. He was granted the power of attorney in order to manage and facilitate that company's activities under [license] number 6000730. He [i.e. Mr. Al-Breig] added that the Second Defendant, Abdul Rahim Merzak, is the license owner and manager [of Emaar RAK]. It was ascertained that, on the day Emaar RAK began doing business inside the Ras Al-Khaimah Free Trade Zone, i.e. 04/09/2005, it paid fees in the amount of AED 12,000.00, at a fixed rate of two thousand dirhams per year, to renew the license for a 6-year period from 11/09/2004 to 11/09/2010. This was done without regard for the annual visits prescribed for renewal of the licenses. Moreover, the Committee reviewed the first leasing contract of 01/05/2007, which was concluded between the Complainant (the Ras Al-Khaimah Free Trade Zone Authority) and Emaar RAK to lease the G4G3 office in the Business Centre District – Prince Park – in the free trade zone for a three-year period ending on 01/04/2004. This review revealed that the Authority had lost a total of AED 259,367.40 on the rent for the offices, for the periods as of the date on which Emaar RAK began

[seal:] Government of Ras Al-Khaimah
[emblem]
Public Prosecution Department
Transaction Section

**The Secretary**                                    **The Panel President**
[signature]                                          [signature]

5

2626/2016, Criminal
09/27/2016 A.D.

[logo]
Courts Department                                    Government of Ras Al-Khaimah
Courts Department                                    Government of Ras Al-Khaimah

doing business inside the free trade zone on 04/09/2005 and until expiry of the last license on 11/08/2014. This rent was for the G3, G4 and G7 offices. The funds that the [First] Defendant wasted consisted of granting him [i.e. the Second Defendant] discounts on the rent amount for Emaar RAK's G3, G4 and G7 offices, and failing to collect the rents for these offices during some periods. It was also determined that the articles of the main leasing contract for the Company's G7 office, which is dated 03/09/2011, did not encompass the right to manage the fast food restaurant – Prince Park – and that the right to manage this restaurant was inserted via an addendum to that contract dated 02/13/2011, which predates the main contract. The Committee further determined that the addendum did not include an increase in the rent amount listed in the main contract. This indicates that the [First] Defendant granted Emaar RAK the right to manage the fast food restaurant free of charge, and that this was done as an additional grant beyond the contract. In addition, the Committee was not able to compute the monies that the Authority lost out on with respect to that. This is because the Authority provided no information about this restaurant. Based thereupon, the Committee concluded that the First Defendant, Oussama El Omari, is the one responsible for committing the violations and causing the Authority to lose out on monies, and that he did so by failing to collect the annual increases in the fees for renewing Emaar RAK's licenses, granting Emaar RAK discounts on the rent amount for the G3, G4 and G7 offices, failing to collect the rent on these offices during some periods, as well as assigning management of the fast food restaurant – Prince Park – free of charge. This was done in agreement with the Second Defendant, the Company's owner, who issued a general and absolute power of attorney to the First Defendant for all of the Company's sale and management transactions. He [i.e. Mr. Al-Breig] added that the total sum that the Authority lost out on due to the Company's failure to renew its license during the period from 11/09/2003 to 11/08/2014 was three hundred ninety three thousand five hundred sixty nine dirhams and twenty three fils (AED 393,569.23). This is in addition to the sums that the Authority lost out on when the First Defendant granted Emaar RAK the right to manage the fast food restaurant for a sum of 104,201.83 [dirhams] during the period from 02/13/2011 to 11/08/2014.

The Ras Al-Khaimah Free Trade Zone Authority's letter indicates that Defendant / Oussama El Omari is a US citizen, that he worked as Chief Executive Officer from 02/08/2003 to 06/03/2012, he held job

[seal:] Government of Ras Al-Khaimah
[emblem]
Public Prosecution Department
Transaction Section

**The Secretary**                                                    **The Panel President**
[signature]                                                              [signature]

6

2626/2016, Criminal
09/27/2016 A.D.

[logo]
Courts Department                                      Government of Ras Al-Khaimah
Courts Department                                      Government of Ras Al-Khaimah

rank no. 24, that he entered and exited [the UAE], and that his last departure was from the UAE's Dubai Airport on 02/15/2014 when he flew to Switzerland.

The two Emaar RAK license renewal applications, dated 01/05/2012 and 11/28/2012, established that the First Defendant signed both applications as Emaar RAK's representative.

The Free Trade Zone Authority's statement established that the First Defendant is the actual owner of Emaar RAK as per the absolute power of attorney granted to him by the Second Party. Moreover, the Directorate General for Residency and Foreigner Affairs established that he left the country and went to France on 03/22/2006.

The email from the Ras Al-Khaimah Investment Authority's legal counsel provided copies of the Emaar RAK license cancellation application, as well as copies of absolute and general power of attorney no. (5449/M36/2004) Ras Al-Khaimah that the Second Defendant, Abdul Rahim Merzak - a Moroccan citizen who holds passport no **Redacted** which was issued on 08/07/2003 – granted in his capacity as the owner of the Emaar RAK establishment to the First Defendant, Oussama El Omari.

With respect to the subject matter of the crime, as a preface to its ruling, the Court notes that this crime consists of abusing a public job by working to achieve gain for himself or for a third party thereby harming his employer's interests. Indeed, Article ((227)) of the Federal Penal Code stipulates the following: "A punishment of temporary imprisonment shall be imposed on any public official, or person tasked with a public service, who is entrusted with safeguarding the interest of the State or one of the authorities listed in Article (5) in a transaction, operation, or case, and who willfully harms that interest in order to gain a profit for himself or for a third party."

A reading of this provision reveals that this statute gives a unique position to the act of causing harm. Indeed, in addition to requiring that the perpetrator to be a public official who is performing his functions, the Legislature intentionally added the requirement that the crime entails undue profiteering. Moreover, this crime is a compound crime consisting of two elements, specifically intentionally causing harm with both of its material and emotional pillars, as well as the presence of a specific intent, which is the intent to achieve gain for oneself or for a third party. The crime only occurs when both elements are present. This is contrary to the situation in the Egyptian Penal Code which separates the requirements, whereby Article ((115)) addresses the crime profiteering on its own, and

[seal:] Government of Ras Al-Khaimah
[emblem]
Public Prosecution Department
Transaction Section

**The Secretary**                                                          **The Panel President**
[signature]                                                                      [signature]

2626/2016, Criminal
09/27/2016 A.D.

[logo]
Courts Department                                    Government of Ras Al-Khaimah
Courts Department                                    Government of Ras Al-Khaimah

Article ((116 Bis)) addresses the crime of intentionally causing harm on its own. Accordingly, in application of the aforementioned Article ((227)), the crime of causing intentional harm has several requirements:

**First:** The perpetrator must be a public official or someone tasked with a public service.

**Second:** The perpetrator must be someone who is entrusted with preserving one of the interests of the State or that of one of the authorities set forth in Article ((5)). The Legislator provided a non-exhaustive list of examples of this type of crime, which included a deal, transaction or matter. Accordingly, any work that is entrusted to a public official, and that constitutes one of his employer's interests, can be criminalized if the other elements of the crime exist.

**Third:** The material element of this crime is the harmful act. This conduct occurs when the perpetrator actively or passively undertakes an activity that results in harm to the funds or interest. This harm must take place. It can be material or emotional, and can be either in the form of a reduction in funds, foregone profit, or depravation from a right. The magnitude of the loss is irrelevant.

In order for harm to exist as an element of this crime, it must actually occur, be that now or in the future. It must also be confirmed, i.e. proven. This is because a crime cannot be deemed to exist based upon the likelihood that one of its elements may be fulfilled.

**Fourth:** The emotional element of this crime is intent, and within this element, criminal intent is divided into two parts:

The first part: It is general intent whereby the Defendant, as a public official, knows that his conduct is harmful to his employer's interests, wants to commit the act, intends to harm his employer, has accepted that, and has proceeded with committing that act.

The second part: It is specific intent whereby the perpetrator intends to cause the harm in order to achieve gain for himself or for a third party. Specific intent is the objective that the perpetrator formulates in his mind. Therefore, it is what motivates him to commit the act, regardless of whether or not the goal is achieved. Indeed, this crime is classified as a danger crime that threatens the integrity of a public job because it endangers the public interest through profiteering on the part of the public official holding that job. The existence of this danger is not undermined when the act fails to achieve actual profit, or when it does not pose a real danger. This is because it constitutes a risk

[seal:] Government of Ras Al-Khaimah
[emblem]
Public Prosecution Department
Transaction Section

**The Secretary**                                              **The Panel President**
[signature]                                                    [signature]

8

2626/2016, Criminal
09/27/2016 A.D.

[logo]
Courts Department                                    Government of Ras Al-Khaimah
Courts Department                                    Government of Ras Al-Khaimah

as soon as there is a conflict between public and private interests. The Legislature did not require that the perpetrator's conduct lead to the achievement of a result. Rather, the Legislature deemed it sufficient for the perpetrator to attempt to achieve a gain or benefit. If the perpetrator does not intend to achieve a gain or benefit for himself or for a third party, then there is no crime.

**On the capacity as a public official** with respect to this charge, Article (5) of the Penal Code has defined a public official as (1) Persons entrusted with public authority and employees working in ministries and governmental departments. (2)… (3)…. (4)… (5) Chairmen and members of board of directors, managers and all other employees working in associations and public corporations.

**Moreover, Article (7)** of the Federal Penal Code has defined the term "Government" as follows: (In this law, unless the context otherwise requires, "Government" shall include the Federal Government and the Governments of the Emirates that are members of the Federation.) In application thereof, the [First] Defendant has satisfied the presumption that he is a public official who has functions because he is a chief executive officer who has been entrusted with performing his job, and works for the Ras Al-Khaimah Free Trade Zone Authority, which is a governmental authority. These elements accord him the capacity of a public official. Through this job, he is tasked with preserving the Authority's funds and handling its affairs in a manner that achieves the public interest and properly utilizes all of its resources.

With respect to the intentional harm, the First Defendant did intentionally cause harm to his employer's interests by participating with the Second Defendant. Indeed, he abused his authority, as the Chief Executive Officer of the Ras Al-Khaimah Free Trade Zone Authority, and granted facilities to Emaar RAK, which is owned by the Second Defendant who issued a general and absolute power of attorney to the First [Defendant]. Indeed, he [i.e. the First Defendant] granted discounts to Emaar RAK on the rent amount for the G3, G4 and G7 offices. These discounts were not given to any other companies. The Committee's report contains a list of these discounts. Committee member Maan Al-Breig testified to that during the investigations. Moreover, the [First] Defendant granted Emaar RAK the right to manage the fast food restaurant – Prince Park – free of charge, and failed to collect the annual [rate] increases prescribed for renewing Emaar RAK's license for the period from 11/09/2004 to 10/09/2010. Indeed, the [First]

[seal:] Government of Ras Al-Khaimah
[emblem]
Public Prosecution Department
Transaction Section

**The Secretary**                                                    **The Panel President**
[signature]                                                          [signature]

9

2626/2016, Criminal
09/27/2016 A.D.

[logo]
Courts Department                                       Government of Ras Al-Khaimah
Courts Department                                       Government of Ras Al-Khaimah

Defendant approved renewal of the license without charging the Company the annual increases in violation of the law, and despite Emaar RAK's failure to pay the rent on the offices for some of the periods. This was confirmed by both of the Company's license renewal applications, which were dated 01/05/2012 and 11/28/2012, and were signed by Defendant Oussama El Omari in his dual capacity as Emaar RAK's representative. Moreover, he was the one who signed all of the leasing contracts in his capacity as Emaar RAK's representative pursuant to the absolute and general power of attorney granted to him by the Second Defendant, Abdul Rahim Merzak. This caused the Authority to sustain the harm of foregone monies in the amount of three hundred ninety three thousand five hundred sixty nine dirhams and twenty three fils… Therefore, the general criminal intent did exist and consists of intentionally causing harm. Indeed, the First Defendant proceeded with committing this violation by approving renewal of Emaar RAK's license, and allowing it to operate within the free trade zone. He did so even though the Company had failed to pay the rent amount for the offices leased thereto during the period from 04/09/2009 to 11/08/2011, failed to pay the license fees for the periods from 11/09/2003 to 11/08/2004 and from 11/09/2010 to 11/08/2011, and failed to pay the annual increases prescribed for renewal of the license for the period from 11/09/2004 to 11/08/2014. In addition, the [First] Defendant granted Emaar RAK a discount on the rent amount for the G3, G4 and G7 offices, and unduly granted it the right to manage the fast food restaurant – Prince Park. This caused the Authority to lose out on large sums, and led him to benefit from these sums to the detriment of his employer's interests…

The [First] Defendant also demonstrated specific intent by willingly approving specification [sic: typo: renewal] of the licenses in his capacity as Emaar RAK's representative, and achieved personal gain from that Company. The result of this intent was achieved, and a causal relationship was established vis-à-vis the harmful act, which consisted of his commission of the aforementioned acts. Therefore, the elements of that crime were fulfilled with the agreement and assistance of the Second Defendant.

The Court of Cassation has ruled that the law does not set out a specific form that must be used

[seal:] Government of Ras Al-Khaimah
[emblem]
Public Prosecution Department
Transaction Section

**The Secretary**                                       **The Panel President**
[signature]                                             [signature]

10

2626/2016, Criminal
09/27/2016 A.D.

[logo]
Courts Department                                       Government of Ras Al-Khaimah
Courts Department                                       Government of Ras Al-Khaimah

in a judgment addressing an incident requiring punishment and the circumstances wherein that incident occurred, so long as the contents of the judgment are sufficient to understand the elements and circumstances of the incident as surmised by the Court… (Ras Al-Khaimah Court of Cassation – Cassation Appeal No. 10 of the year 3, Judicial - Hearing of 07/20/2008, Rule 39 – Page 360).

It has also been established that the Court can use the witness statements and all case elements submitted to it in order to formulate the true picture of the incident at issue in the case, which it finds convincing, and that it can disregard any pictures conflicting therewith. This is because the Court has the authority to evaluate the evidence presented to it, and to rely on the evidence that it finds convincing and reliable. When the Court relies on witness testimony, this indicates that it has analyzed all considerations that the defense has raised against this testimony because that is considered a substantive argument.
(Ras Al-Khaimah Court of Cassation – Criminal Judgments - Cassation Appeal No. 26 of the year 5, Judicial - Hearing of 05/23/2010).

Since this Court is convinced by the aforementioned evidence set forth in the case file, and is convinced that the elements of the crime have been fulfilled, it finds that the Defendants are guilty of this act. Therefore, the Defendants must be convicted thereof in application of Article ((227)) of the Federal Penal Code, as amended, and Article ((212)) of the Code of Criminal Procedure.

With respect to restitution of the funds involved in the case, and those resulting therefrom, Article ((230)) of Federal Penal Law No. ((3 of 1987)) states that apart from the penalties prescribed for the crimes indicated in this chapter, the perpetrator shall be sentenced to restitution and a fine equal to the amount of the funds involved in or resulting from the crime.

It has been established that the fine prescribed in Article ((230)) of the Penal Code is one of the proportional fines prescribed in Article ((72)) of that code. Therefore, the Defendants must be ordered to pay that fine, jointly and severally, for perpetrating the crime separately or together.
(Dubai Court of Cassation – Cassation Appeal No. 55 of the year 1999, Judicial - Hearing of 05/01/1999).

Based thereupon, the term restitution here means either the funds involved in the crime or the funds resulting therefrom. Indeed, the term "or"

[seal:] Government of Ras Al-Khaimah
[emblem]
Public Prosecution Department
Transaction Section

**The Secretary**                                                          **The Panel President**
[signature]                                                                    [signature]

2626/2016, Criminal
09/27/2016 A.D.

[logo]
Courts Department                                    Government of Ras Al-Khaimah
Courts Department                                    Government of Ras Al-Khaimah

indicates a differentiation. Accordingly, restitution cannot be ordered twice for the same act… Therefore, the Defendants must jointly pay restitution and a proportional fine corresponding to the amount of the funds, which totals AED 393,569.235, as will be detailed in the verdict.

Based upon the foregoing, the Court finds that Defendants:

**1. Oussama El Omari**               **US citizen**

**2. Abdul Rahim Merzaq**             **Moroccan citizen**

**The First Defendant:** While he was a public official at the Ras Al-Khaimah Free Trade Zone, he was entrusted with protecting the public interest. However, in his former capacity, he intentionally harmed the Authority's funds and interests by causing it financial damages estimated at three hundred ninety three thousand five hundred sixty nine dirhams and twenty three fils (393,569.23) in order to achieve personal gain in that amount. In doing so, he unduly deprived the Authority of the said sum as indicated in the documents.

 **The Second Defendant:** He participated, through agreement and assistance, with the First Defendant in committing the crime covered by the first charge. He did so by agreeing with the First Defendant to commit that crime, and assisting him in committing that crime by drafting for him an absolute and general power of attorney for the Emaar RAK Company, which enabled the First Defendant to use the Second Defendant's name in order to achieve personal gain. Indeed, the crime occurred based upon this agreement and this assistance as indicated in the documents.

Therefore, the Court must punish them under the provisions of Articles ((5/1 item 1-5, 45/2-3, 47, 227 and 230)) of Federal Criminal Code No. ((3 of 1987)) as amended.

With respect to deportation, the case speaks to the magnitude of the corruption perpetrated by both Defendants, the harm that resulted from the violations that the First Defendant committed with the Second Defendant's assistance, and the magnitude of the pervasive corruption that must be excised using the law. Accordingly, the Court hereby rules to deport them from the State [i.e. the UAE] upon completion of the punishment in application of Article ((121/1)) of the Penal Code.

[seal:] Government of Ras Al-Khaimah
[emblem]
Public Prosecution Department
Transaction Section

**The Secretary**                                              **The Panel President**
[signature]                                                        [signature]

12

2626/2016, Criminal
09/27/2016 A.D.

[logo]
Courts Department                                    Government of Ras Al-Khaimah
Courts Department                                    Government of Ras Al-Khaimah

       Moreover, as per Article ((78)) of this law, which stipulates that, "If the convict who is sentenced to life or temporary imprisonment is a public official or assigned to public service, he shall be removed from such service as a result of the sentence," the Court hereby rules to remove the First Defendant from his job in application of the provisions of Article ((78)) of the Federal Penal Code.

**For these reasons**

**The Court hereby rules, in absentia, that Defendants:**

**Oussama El Omari and Abdul Rahim Merzaq** shall each be punished with a prison term of seven years for the charges leveled against them; that they shall jointly pay restitution in the amount of AED 393,569.23, as well as a fine equivalent to the funds involved in and resulting from the crime in the amount of 393,569.23 (three hundred ninety three thousand five hundred sixty nine dirhams and twenty three fils); that the First Defendant shall be removed from his job; and that both Defendants shall be deported from the State [i.e. the UAE] once they have served the sentence issued against them.

The panel that heard the arguments, deliberated, set the case for adjudication, and signed the judgment document was formed under the presidency of Judge / Sameh Hamed Shaker, and the membership of Judge / Hosam El-Din Mohammed Ali and Judge / Samih Saeed Samhan. However, the panel that pronounced the judgment was formed as indicated in this judgment.

[seal:] Government of Ras Al-Khaimah
[emblem]
Public Prosecution Department
Transaction Section

**The Secretary**                                                          **The Panel President**
[signature]                                                                    [signature]


TRANSPERFECT

City of New York, State of New York, County of New York

I, Angela Lo, hereby affirm that the following is to the best of my knowledge and belief, a true and accurate Translation from Arabic to English of the document "Emaar RAK - Judgment"

Angela Lo, Project Assistant
TransPerfect Translations International, Inc.

Sworn to before me this
October 17, 2016

Signature, Notary Public

MICHELLE CLAERHOUT
NOTARY PUBLIC-STATE OF NEW YORK
No. 01CL6345622
Qualified In Bronx County
My Commission Expires 07-25-2020

Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016 | T 212.689.5555 | F 212.689.1059 | WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE